UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ACTION NISSAN, INC.,

        Plaintiff,

v.                                                       Case No.: 6:21-cv-2152-WWB-EJK

HYUNDAI MOTOR AMERICA
CORPORATION,

        Defendant.
                                          /

## ORDER

THIS CAUSE is before the Court on Plaintiff's Motion to Disqualify HMA's Proposed Expert Witness John Asker, Ph.D. (Doc. 119), and the Amended Opposition (Doc. 193) thereto. For the reasons set forth herein, the Motion will be denied.

**I.    BACKGROUND**

Plaintiff, Action Nissan, Inc., doing business as Universal Hyundai ("**Universal**"), is an authorized dealer of Hyundai and Genesis brand vehicles in Orlando, Florida, pursuant to franchise agreements with Defendant Hyundai Motor America Corporation ("**HMA**"). (Doc. 1 at 1–3). Plaintiff has historically been one of the highest volume sellers of Hyundai vehicles in the United States. (*Id.* at 6). However, Plaintiff alleges that its sales volume has decreased significantly since 2019 due to Defendant's failure to allocate vehicles to Plaintiff for sale at the same rate it is allocating vehicles to other dealers. (*Id.* at 6–8). Plaintiff alleges that Defendant's failure to allocate adequate inventory and equal distribution is in retaliation for Plaintiff's filing and prosecution of a lawsuit against Defendant. (*Id.* at 10). As a result, Plaintiff has brought a five count Complaint alleging

claims for violations of section 320.64, Florida Statutes, breach of contract, and breach of the implied covenant of good faith and fair dealing. (*Id.* at 11–23).

## II. LEGAL STANDARD

Although opinion testimony is generally inadmissible, Federal Rule of Evidence 702 permits "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" to provide opinion testimony in limited circumstances. Expert opinion testimony is admissible if: (1) "the expert's . . . specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (2) "the testimony is based on sufficient facts or data"; (3) "the testimony is the product of reliable principles and methods"; and (4) "the expert has reliably applied the principles and methods to the facts of the case." *Id.*

"[T]he Federal Rules of Evidence 'assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)). Pursuant to *Daubert*, the determination of admissibility is "uniquely entrusted to the district court," which is given "considerable leeway in the execution of its duty." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (quotation omitted). However, "[t]he burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999).

The Eleventh Circuit has distilled the test for determining the admissibility of expert testimony under Rule 702 and *Daubert* into three basic inquiries—(1) is the expert

qualified; (2) is the expert's methodology reliable; and (3) will the testimony assist the trier of fact. *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998).

## III. DISCUSSION

Universal moves to exclude the expert opinion and testimony of John Asker. ("**Asker Report**", Doc. 119-1). As an initial matter, Universal does not challenge Asker's qualifications as an expert, and the Court finds that Asker is qualified to render the opinions he seeks to offer in this case. Asker holds a Ph.D. in economics from Harvard University and is Professor of Economics at the University of California, Los Angeles. (*Id.* at 6, 139). His research focuses on the organization and behavior of firms, industries, and their markets, with a particular focus on the relationships between manufacturers and retailers. (*Id.* at 6). Asker's academic work has been published in several journals of economics, political economy, and industrial organization. (*Id.* at 140–141). In this case, Asker seeks to opine as to "whether there is any reliable econometric basis for Universal's claim that is has been discriminated against in terms of allocation and had significantly lower days' supply of inventory compared to other dealers." (*Id.* at 9 (quotations and footnotes omitted)). Asker analyzes this question by considering HMA's vehicle allocation methodologies as applied to Universal and to other dealers in Florida and the surrounding region. (*Id.* at 50). Accordingly, based on his education and experience, the Court finds that Asker is qualified.

Universal does, however, challenge the reliability of Asker's methodology. Universal first argues that Asker uses an improper definition of "discriminatory" in concluding that no such discrimination occurred. Universal insists this is the ultimate legal issue in this case, and Asker is accordingly obliged to rely on the legal definition at issue

3

under Fla. Stat. § 320.64. *See Haney v. Mizell Mem'l Hosp.*, 744 F.2d 1467, 1474 (11th Cir. 1984) ("[T]o be admissible under Rule 704 an expert's opinion on an ultimate issue must be helpful to the jury and also must be based on adequately explored legal criteria."); *Gov't Emps. Ins. Co. v. Right Spinal Clinic, Inc.*, No. 8:20-cv-0802, 2022 WL 743800, at *4 (M.D. Fla. Mar. 11, 2022) (excluding expert opinion that was not grounded the relevant statute's definitional section).

Universal's argument suffers from several flaws. First, Asker is not offering an opinion on the ultimate legal issue. Count I of the Complaint asserts a claim for violation of Fla. Stat. § 320.64(18)(e), which forbids a car manufacturer from using an allocation system that is "unfair, inequitable, unreasonably discriminatory, or not supportable by reason and good cause after considering the equities of the affected motor vehicles dealer or dealers." The ultimate question for the jury as to Count I, then, is not whether HMA's allocation to Universal was discriminatory, but rather whether it was unreasonably so, or otherwise violative of section 320.64(18)(e). Provided that his methods are reliable and helpful to the fact finder, Asker may offer an economic analysis of HMA's allocation systems without relying on a statutory definition of "discriminatory."

Second, there is no statutory definition of "discriminatory" as the term is used in section 320.64. *See* Fla. Stat. §§ 320.01, 320.60. Indeed, despite complaining that Asker's definition is inadequate, Universal offers no alternative. Asker therefore could not have grounded his opinion in a nonexistent legal definition. Lacking a statutory definition of "discriminatory," Asker naturally provides his own, consulting relevant economic literature and his own expertise in the field of industrial organization. (*See* Doc. 119-1 at 38–40 ("Discriminatory means that entities with the same economic characteristics

4

receive different outcomes and differences in outcomes are correlated with non-economic characteristics.")). Further, Asker notes that use of the term "non-discriminatory" in economic literature "aligns with the ordinary dictionary meanings of 'fair' or 'equitable'"— terms appearing in section 320.64(18)(e). (*Id.* at 39). Asker considers this definition in the context of the parties' dealer-manufacturer vertical relationship, i.e., one involving "firms at different levels in the supply chain." (*Id.* at 39–40). The Court accordingly finds Asker's definition is reliable. *See United States v. Frazier*, 387 F.3d 1244, 1261–62 (11th Cir. 2004) ("When evaluating the reliability of scientific expert opinion, the trial judge must assess whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." (footnote omitted) (quoting *Daubert*, 509 U.S. at 592–93)).

Universal's remaining arguments are also meritless because they go to the weight of Asker's opinion rather than its admissibility. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1346 (11th Cir. 2003) ("[N]ormally, failure to include variables will affect the analysis' probativeness, not its admissibility." (quotation omitted)); *Jones v. Otis Elevator Co.*, 861 F.2d 655, 663 (11th Cir. 1988) ("Whether this logical basis has been established is within the discretion of the trial judge and the weaknesses in the underpinnings of the expert's opinion go to its weight rather than its admissibility.").

In its first such argument, Universal asserts that Asker's opinion is unreliable because the alleged misconduct began prior to May 27, 2021, the date Asker uses to begin evaluating Universal's allocations. Universal insists that by using this date, Asker ignores months or years of inequitable treatment, assumes the status quo ante was nondiscriminatory, and then concludes that HMA's unchanged subsequent behavior was

5

likewise nondiscriminatory.  Asker's alleged failure to include these data in his analysis clearly goes to weight and not admissibility.  *Quiet Tech.*, 326 F.3d at 1346.  Moreover, Asker is not obliged to accept Universal's position as to when the alleged misconduct began.  As HMA notes, the date Asker chose is not random.  On May 27, 2021, Universal sent HMA a formal request for additional inventory.  (Doc. 119-1 at 50).  Prior to that date, Asker determined that HMA revealed a preference for lower inventory by frequently turning down allocations of vehicles.  (*Id.* at 100 ("By the principle of revealed preference, Universal's turn-down behavior demonstrates that it did not value and did not want to receive additional inventory offered by HMA.")).  Because Asker's chosen date finds support in the record, he may properly rely on it to form his opinion.  *See Vyas ex rel. Q3 I, L.P. v. Polsinelli PC*, No. 8:22-cv-71, 2023 WL 4305229, at *12 (M.D. Fla. June 30, 2023) ("An expert's opinion, where based on assumed facts, must find some support for those assumptions in the record.  In arriving at that opinion, however, an expert may rely upon disputed facts so long as those facts find support in the record." (quotations omitted)).

Next, Universal argues Asker's analysis ignores that Universal operated with "chronically" low supply of vehicles relative to other comparable dealers.  (Doc. 119 at 13).  Review of the Asker Report reveals this is not the case.  (Doc. 119-1 at 55–56).  In fact, Asker found that Universal's supply of vehicles went up during the period of alleged misconduct.  (*Id.* at 54).  At any rate, this argument again attacks Asker's failure to account for certain data and therefore goes to weight rather than admissibility.  Because Asker clearly accounted for the change in Universal's supply of vehicles, the Court finds that Asker has established the logical basis for his opinion.  *See Jones*, 861 F.2d at 662–62

6

("Expert testimony is admissible which connects conditions existing later to those existing earlier provided the connection is concluded logically.  Whether this logical basis has been established is within the discretion of the trial judge and the weaknesses in the underpinnings of the expert's opinion go to its weight rather than its admissibility." (citation omitted)).  Asker's opinion is reliable on this point.

Universal further argues that Asker's opinion is unreliable because he fails to evaluate whether HMA offered Universal a reasonable or equitable supply of cars, as required by section 320.64(18)(e).  Asker analyzes whether Universal's vehicles allocations had fallen since May 2021, relative to similarly situated regional dealers.  (Doc. 119-1 at 50).  Universal contends this information is unrelated to the applicable legal standard, and Asker's opinion is therefore irrelevant.  However, there is no definition of "inequitable" or "reasonable" under section 320.64(18)(e).  Lacking any statutory criteria for evaluating the equity of HMA's allocations, Asker uses this relative supply approach to test Universal's theory of discriminatory treatment.[1]  (*Id.*).  Thus, Asker attempts to evaluate Universal's claim of inequitable treatment by comparing Universal's change in inventory over time to that of other dealers in the same region.  (*Id.* at 51–52).  Universal does not explain why this method is unreliable, but merely repeats that it does not measure against the applicable standard.  Although the weight of this approach is a question for the jury to decide, it appears perfectly logical that evaluating HMA's treatment of Universal, relative to other dealers, would provide insight to the question of equitable

---

[1] As noted above, Asker states that the economic use of the term "non-discriminatory" in his Report "aligns with the ordinary dictionary meanings of 'fair' or 'equitable.'" (Doc. 119-1 at 38).

7

allocation. *See Jones*, 861 F.2d at 662–63. The Court finds Asker has established the logical basis for his methods and that those methods are reliable. *Id.*

Universal finally argues that Asker's methods are unreliable because they are "contrived to reach a particular result." (Doc. 119 at 19 (quoting *Furmanite Am., Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1126, 1130 (M.D. Fla. 2007))). Specifically, Universal contends that its unfairly reduced allocations prior to May 2021 caused its drop in sales. Further, Universal asserts that Asker uses the reduction in sales to justify reduced allocations after May 27, 2021. However, Asker is not required to accept Universal's theory of the case. Indeed, Asker concludes that other factors—including increased sales by competitor dealers—resulted in Universal's relative allocations being reduced. (Doc. 119-1 at 62). Again, Asker is not required to include any particular data in his analysis, and his conclusions follow logically from the data he did consider. *Quiet Tech.*, 326 F.3d at 1346; *Jones*, 861 F.2d at 663. The Court finds Asker's methods are reliable and not contrived.

On a final note, Universal mentions in passing that Asker's opinion will not help the trier of fact to understand the evidence or to determine a fact in issue but does not develop this argument or support it with citation to authority. This argument is therefore waived. *See W. Sur. Co. v. Steuerwald*, No. 16-61815-CV, 2017 WL 5248499, at *2 (S.D. Fla. Jan. 17, 2017) ("It is axiomatic that arguments not supported and properly developed are deemed waived."); *see also U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) (noting that the court need not consider "perfunctory and underdeveloped" arguments and that such arguments are waived). At any rate, Asker's economic analysis provides insight into Universal's claims and certainly "concerns matters that are beyond

8

the understanding of the average lay person." *Frazier*, 387 F.3d at 1262. The Court accordingly finds that Asker's opinion will assist the trier of fact. *Id.*

## IV. CONCLUSION

For the reasons set forth herein, it is **ORDERED** and **ADJUDGED** that Plaintiff's Motion to Disqualify HMA's Proposed Expert Witness John Asker, Ph.D. (Doc. 119) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on March 20, 2024.

WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record