UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ACTION NISSAN, INC.,

      Plaintiff,

v.                                              Case No.: 6:21-cv-2152-WWB-EJK

HYUNDAI MOTOR AMERICA
CORPORATION,

      Defendant.
                                  /

**ORDER**

THIS CAUSE is before the Court on Plaintiff's Amended Motion for Equitable Relief and Sanctions (Doc. 195) and Defendant's Amended Opposition (Doc. 199) thereto. For the reasons set forth below, the Motion will be denied.

**I.    BACKGROUND**

Plaintiff, Action Nissan, Inc. ("**Universal**") is an authorized dealer of Hyundai and Genesis brand vehicles in Orlando, Florida, pursuant to franchise agreements with Defendant Hyundai Motor America Corporation ("**HMA**"). (Doc. 1, ¶¶ 1, 4). Universal has historically been one of the highest volume sellers of Hyundai vehicles in the United States. (*Id.* ¶¶ 20–22). However, Universal alleges that its sales volume has decreased significantly since 2019 due to HMA's failure to allocate vehicles to Universal for sale at the same rate they are allocating vehicles to other dealers. (*Id.* ¶¶ 27–38). During this period, there has been a general shortage of new motor vehicles in the United States. (Doc. 1-3 at 2–3). Nonetheless, Universal alleges that HMA's failure to allocate adequate inventory is in retaliation for Universal's filing and prosecution of a lawsuit (the "**Genesis**

**Litigation**") against HMA.  (Doc. 1, ¶¶ 51–56).  As a result, Universal has brought a five count Complaint alleging claims for violations of Florida's Dealer Protection Act, section 320.64, Florida Statutes, breach of contract, and breach of the implied covenant of good faith and fair dealing.  (*Id.* ¶¶ 57–134).

## II.   LEGAL STANDARD

A federal court has the inherent authority to sanction a party or attorney where the court finds that the party or attorney acted in bad faith, vexatiously, wantonly, or for oppressive reasons.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991); *Spolter v. Suntrust Bank*, 403 F. App'x 387, 390 (11th Cir. 2010).  "The key to unlocking a court's inherent power is a finding of bad faith."  *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998).  "A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent."  *Id.* (quotation omitted).

In addition to the Court's inherent sanction power, Federal Rule of Civil Procedure 26(g)(3) authorizes the court to impose sanctions for disclosure and discovery violations where an attorney "certification violates [Rule 26] without substantial justification."  Rule 37(b)(2)(A) provides that "[i]f a party . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders" including "rendering a default judgment against the disobedient party."  Under Rule 37, "[a] default judgment sanction requires a willful or bad faith failure to obey a discovery order."  *Holland v. Westside Sportsbar & Lounge, Inc.*, No. 6:19-cv-945-Orl, 2020 WL 7390723, at *3 (M.D. Fla. Aug. 11, 2020) (quotation

omitted), *report and recommendation adopted*, 2020 WL 7390581 (M.D. Fla. Sept. 3, 2020).

## III. DISCUSSION

### A. Burden Shifting under Fla. Stat. § 320.64(18)

Universal first argues that HMA has not maintained records of its allocations methods as required by section 320.64(18), Florida Statutes, and therefore, the Court is required to shift the burden of proof to HMA "to preserve the fairness of these proceedings." (Doc. 195 at 14–16). Section 320.64(18) does not specify a remedy when a licensee, such as HMA, fails to maintain required records. However, Universal points to burden-shifting related to record keeping in the context of the FLSA, actions for accounting, and in medical malpractice as models for its proposed remedy. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946) (holding that in an FLSA case, "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated . . . [t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed"); *Pub. Health Tr. of Dade Cnty v. Valcin*, 507 So. 2d 596, 599–600 (Fla. 1987) (shifting the burden of evidence in a medical malpractice case when a plaintiff first can "establish to the satisfaction of the court that the absence of the records hinders his ability to establish a prima facie case"); *Cassedy v. Alland Invs. Corp.*, 128 So. 3d 976, 978 (Fla. 1st DCA 2014) ("Once the right to an accounting is established, the other party has the burden to prove, by competent, substantial evidence, that the money was properly handled . . . if the trustee fails to keep clear, distinct, and accurate accounts, *all presumptions are against him*[.]" (quotation omitted)).

3

Universal's request for burden shifting will be denied.  First, Universal asks that even if "the Court finds that Universal did not prove a prima facie case, it should shift the burden of proof to HMA to preserve the fairness of these proceedings." (Doc. 195 at 16). This request runs contrary to the plain language of section 320.697, Florida Statutes, which provides for burden shifting only *after* a plaintiff has proven a prima facie case. *See* Fla. Stat. § 320.697 ("Upon a prima facie showing by the person bringing the action that such a violation by the licensee has occurred, the burden of proof shall then be upon the licensee to prove that such violation or unfair practice did not occur.").  On this ground alone, the Court could deny Universal's request.

Second, Universal does not specify to which claims the requested shift should apply.  The Complaint raises five claims, two relating to alleged breach of contract and three for alleged violation of three separate provisions of section 320.64, Florida Statutes. Yet, Universal fails entirely to explain how HMA's recordkeeping—or lack thereof—relates to any particular claim, why the records are necessary to proving any claim, or why the alleged lack of records necessitates a burden shift on any claim.  Instead, Universal offers only a conclusory assertion that the shift is necessary to "preserve the fairness of these proceedings" because the statute at issue is remedial in nature.  This sort of underdeveloped argument is insufficient. *See U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) (noting the court need not consider "perfunctory and underdeveloped" arguments and that such arguments are waived).

Third, each of Universal's cited comparators is inapposite.  In the context of the FLSA, a plaintiff must first prove "that he has in fact performed work for which he was improperly compensated" before the burden shifts to the employer. *Anderson*, 328 U.S.

4

at 687. Similarly, in an action for an accounting, a defendant only bears the burden "[o]nce the right to an accounting is established." *Cassedy*, 128 So. 3d at 978. These authorities cannot support Universal's requested relief, which, as noted above, would shift the burden even if Universal *fails* to prove a prima facie case. Finally, in medical malpractice, the burden of evidence shifts after the plaintiff "first establish[es] to the satisfaction of the court that the absence of the records hinders his ability to establish a prima facie case." *Valcin*, 507 So. 2d at 599–600. Because Universal has not identified on which claims it seeks to shift the burden, it cannot show how HMA's alleged failure to keep records has hindered its ability to prove its case. Indeed, Universal has not even attempted to do so. Accordingly, the Court will deny Universal's request for burden-shifting.

### B. Judicial Estoppel

Second, Universal asks that HMA be judicially estopped from asserting positions inconsistent to those it asserted in previous litigation. Before this action was filed, HMA brought suit against a different Hyundai Dealer in West Palm Beach, Florida, styled *Hyundai Motor Am. Corp. v. EFN W. Palm Motor Sales, LLC*, No. 20-cv-82102 (S.D. Fla. 2020) ("**WPB Litigation**"). Universal contends that during the WPB Litigation, HMA admitted on the record that it withheld vehicles from Universal due to the Genesis Litigation; that HMA has always considered litigation in making allocation decisions; and that HMA only considered three factors in guiding discretionary allocation. Universal seeks to bar HMA from arguing positions to the contrary. (Doc. 195 at 21).

The doctrine of judicial estoppel "prevents parties from making a mockery of justice by inconsistent pleadings . . . and playing fast and loose with the courts." *Blumberg v.*

5

*USAA Cas. Ins. Co.*, 790 So. 2d 1061, 1066 (Fla. 2001) (quotations omitted). A federal court sitting in diversity applies the doctrine of judicial estoppel according to the law of the state where it sits. *Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1358 n.7 (11th Cir. 2018). Under Florida law, a "claim or position successfully maintained in a former action or judicial proceeding bars a party from making a completely inconsistent claim or taking a clearly conflicting position in a subsequent action or judicial proceeding, to the prejudice of the adverse party, where the parties are the same in both actions, subject to the 'special interest and policy considerations' exception to the mutuality of parties requirement." *Grau v. Provident Life & Acc. Ins. Co.*, 899 So. 2d 396, 400 (Fla. 4th DCA 2005) (footnote omitted).

Judicial estoppel is inapplicable here because Universal cannot establish that HMA has taken inconsistent positions between the WPB Litigation and the instant case. Universal first asserts that during the WPB Litigation, HMA stated "it could withhold allocation due to litigation to force compliance by dealers," but is now trying to argue it never considered litigation in making vehicles allocations. (Doc. 195 at 17). However, the transcript Universal cites shows HMA's counsel discussing that HMA had chosen to withhold allocations from *only the defendant dealer*, who was alleged to have breached its contract with HMA by committing warranty fraud. (*See* Doc. 195-5 at 57:4–59:16 ("We could have sued for [breach of contract], we didn't. We chose instead to take a different tactic, which is, if you are not going to comply with the contract, I am not going to give you additional vehicles that I can give to a dealer who is complying with the contract.")). Clearly, this statement does not show HMA taking the position that it could, at large, withhold allocation due to litigation.

Universal further argues that one of HMA's employees testified that "vehicles were withheld from Universal due to litigation and furthermore, the vehicles were withheld due to the litigation where Universal received a favorable verdict." (Doc. 195 at 18). Again, however, Universal mischaracterizes the record. The cited trial transcript shows:

> [Opposing Counsel]: Another dealer that didn't get discretionary allocation was Universal Hyundai, right?
>
> [HMA Employee]: I don't recall them getting any.
>
> [Opposing Counsel]: That is because they were in litigation with Hyundai, right?
>
> [HMA Employee]: One of the factors of whether we would or wouldn't is definitely whether the dealer is in litigation with our company.
>
> [Opposing Counsel]: And Universal also was not told it was not getting discretionary allocation, right?
>
> [HMA Employee]: Correct.
>
> [Opposing Counsel]: Universal Hyundai sued Hyundai and got a multimillion dollar judgment against Hyundai, right?
>
> [HMA Employee]: I don't know if – I don't know.
>
> [Opposing Counsel]: Let's go to the transcript, 113 to 119. "Question: Now, Universal Hyundai was a dealer that had been in litigation with Hyundai, correct? Answer: Yes. Question: Did Universal Hyundai actually receive a money judgment against Hyundai
>
> . . . .
>
> Answer: I don't ever – I didn't – I never see like the final outcome, but it was my understanding that there was some type of financial award, but I don't know if it ever really happened or not. I don't know." Do you recall that testimony?
>
> [HMA Employee]: Yes.

(Doc. 195-4 at 9:20–10:24). Contrary to Universal's insistence, this testimony does not show that Universal's judgment in the Genesis Litigation *caused* HMA to withhold

7

allocation from Universal. Instead, HMA's employee testified only that: (1) Universal did not receive discretionary allocation; (2) that HMA considers litigation in making discretionary allocation decisions; and (3) Universal won a money judgment against HMA. The causal link between these facts is missing. Although it may be reasonable for a jury to infer that link, this testimony simply does not show the sort of "completely inconsistent claim" necessary to warrant judicial estoppel. *Grau*, 899 So. 2d at 400. Just as in the WPB Litigation, HMA asserts in this case that ongoing litigation with a dealer is a factor in discretionary allocation.

Finally, Universal argues that HMA should not be permitted to argue it considered factors in discretionary allocation beyond those mentioned in the WPB Litigation. In support, Universal states that in the WPB Litigation, HMA adopted and identified three factors considered in discretionary allocation decisions: "whether the dealer has participated in Hyundai programs . . . , invested in the brand . . . , and whether the dealer is involved in litigation with HMA[.]" (Doc. 194-16 at 17). However, this quotation is incomplete. In the WPB Litigation, HMA stated that its discretionary allocation was guided by "a number of factors, including, *but not limited to*" those just listed. (*Id.* (emphasis added)). Therefore, although HMA now contends there are at least ten factors which guide discretionary allocations, that position is simply not inconsistent with its prior position. Because Universal has not established that HMA has taken any inconsistent position, judicial estoppel is inappropriate.

### C. Sanctions

Finally, Universal contends that several of HMA's discovery responses violate Federal Rule of Civil Procedure 26(g), which provides for sanctions where a party has

8

improperly certified that its discovery responses are complete and correct at the time of disclosure. Fed. R. Civ. P. 26(g)(1)(A), (g)(3). Universal accordingly seeks sanctions against HMA in the form of a default judgment, pursuant to the Court's inherent power and Rule 37(b)(2)(A).

The Court will deny this request because Universal fails to demonstrate HMA's bad faith. For sanctions to issue pursuant to the Court's inherent power or Rule 37, Universal must establish that HMA's discovery responses amount to willful or bad faith failure to comply with a discovery order. *See Holland*, 2020 WL 7390723, at *3 ("A default judgment sanction [under Rule 37] requires a willful or bad faith failure to obey a discovery order."); *see also Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009) ("The key to unlocking a court's inherent power is a finding of bad faith . . . A party demonstrates bad faith by, *inter alia*, delaying or disrupting the litigation or hampering enforcement of a court order." (quotation omitted)).

Universal contends that a default judgment is warranted due to HMA's "numerous contradictory responses to written discovery," failures to timely supplement discovery, and contradictions between HMA's discovery responses and testimony by HMA's witnesses. (Doc. 195 at 23–24). This purported misconduct falls well short of bad faith. First, any failure to supplement discovery responses in violation of Rule 26(e) is not subject to sanction by default judgment absent a court order that HMA has disobeyed willfully or in bad faith. *Holland*, 2020 WL 7390723, at *3. Although Universal notes that the Court did order HMA to supplement discovery, (Doc. 79 at 2), HMA appears to have complied with that Order, (*see generally* Doc. 87-1). Universal makes no argument to the contrary. Nor does Universal argue that HMA has acted in bad faith by practicing fraud

9

upon the Court. *See Hornady v. Outokumpu Stainless USA*, 572 F. Supp. 3d 1162, 1186 ("Bad faith exists when the court finds that a fraud has been practiced upon it, or that the very temple of justice has been defiled, or where a party or attorney knowingly or recklessly raises a frivolous argument." (quotations omitted)). This is also true with respect to purported contradictions between HMA's discovery responses and the testimony of several HMA witnesses. (*See* Doc. 195 at 24). Even accepting Universal's contention that these contradictions exist, Universal has made no argument that HMA has acted in bad faith or willfully disobeyed an order of this Court. Default judgment is therefore inappropriate.

**IV.    CONCLUSION**

For the reasons stated herein, it is **ORDERED** and **ADJUDGED** that Plaintiff's Amended Motion for Equitable Relief and Sanctions (Doc. 195) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on September 25, 2024.

_____
WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record