**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| ACTION NISSAN, INC. d/b/a UNIVERSAL HYUNDAI FOR ITSELF AND IN THE NAME OF THE Department of Highway Safety and Motor Vehicles of the State of Florida, for its use and benefit,<br><br>                    Plaintiff,<br><br>v.<br><br>HYUNDAI MOTOR AMERICA CORPORATION,<br><br>                    Defendant. | Case No. 6:21-cv-02152-WWB-UAM |

**JOINT PRETRIAL STIPULATION**

**1.     The basis of federal jurisdiction.**

This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) in that there is complete diversity of citizenship and the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs.

**2.     A concise statement of the action.**

Since 1996, Plaintiff Action Nissan Inc. has been doing business as Universal Hyundai ("Universal"), a franchised Hyundai dealership in Orlando, Florida.

Defendant Hyundai Motor America ("Hyundai") is the exclusive distributor of Hyundai motor vehicles in the United States.

Universal contends it has historically been one of the largest volume selling Hyundai dealers in the entire country. In 2017 and 2018, Hyundai ranked Universal as one of the top ten dealers nationally in terms of vehicles sold. Universal sued Hyundai in 2018 over

1

Hyundai's breach of a settlement agreement and the case was tried in the fall of 2021. While the case was pending, Universal believes it started experiencing inventory issues, leading to its sales rankings dropping and its sales efficiency (the metric by which Hyundai measures dealer performance) decreasing. Universal wrote to, and spoke with, Hyundai raising its concerns with inventory. However, no resolution to Universal's concerns was achieved to Universal's satisfaction.

Plaintiff claims that Hyundai has failed to allocate it an equitable amount of new car inventory. Plaintiff asserts five claims: (1) violation of §320.64(18)[1], Fla. Stat.; (2) violation of §320.64(19), Fla. Stat.; (3) violation of §320.64(22), Fla. Stat.; (4) breach of contract; and (5) breach of the implied covenant of good faith and fair dealing. Defendant denies that it failed to allocate it an equitable amount of new car inventory during this time period and that there are any issues with its allocation systems generally.

### 3. A concise statement of each party's position.

#### a. <u>Plaintiff</u>

Universal claims that Hyundai violated Florida law and breached the parties' agreement by failing to provide Universal's Hyundai dealership with sufficient and fair inventory. Universal has historically been one of the highest volume Hyundai dealers in the entire United States. Under normal circumstances, Universal should have continued to receive the same high portion of vehicles from Hyundai—it was selling vehicles faster than other dealers. And, Hyundai will tell you that "[t]he primary goal in distributing the small subset of vehicles available for discretionary allocation in the Southern Region is to

---

[1] The Dealer Act was amended effective July 1, 2023. All references to Chapter 320 in this document are to the version that was in effect 2017 to 2023. Neither party is alleging the statutory changes are retroactive.

maximize the total allocation the region would earn." ECF 184 at 6. If that were true and used consistently, Universal as a quick-selling, high-volume Hyundai dealer should have received a greater inventory than Hyundai provided. Instead, during the years at issue in this case, Universal's sales rank and share of Hyundais sold decreased substantially. The cause? Insufficient inventory from Hyundai.

Universal alleges that Hyundai provided vehicles to other dealers at a greater rate than it did Universal in violation of Florida law and the Dealer Agreement between the parties. Universal alleges that Hyundai reduced the portion of vehicles that it historically allocated to Universal. Universal is alleging that Hyundai did not provide it with the necessary volume of vehicles to maintain its sales rank, share of sales, market share and competitive position, and Universal lost sales and profit, as a result. Universal alleges Hyundai's wrongdoing is motivated, in part, by retaliation due to a prior lawsuit between the parties (*Action Nissan, Inc. d/b/a Universal Hyundai and William Nero v. Hyundai Motor America and Genesis Motor America*, Case No. 6:18-cv-WWB-UAM). Following trial in that matter, Universal and owner Bill Nero were awarded $16,000,000.00 to be paid by Hyundai. Hyundai appealed that judgment to the Eleventh Circuit Court of Appeals, which affirmed the trial result in Universal's favor. Hyundai has admitted that, at least for some portion of time, it withheld certain allocations from Universal as a result of litigation. Universal will show the retaliation, and the allocation manipulation in general, occurred for a longer period of time than Hyundai is willing to admit.

Universal further alleges, and this Court has found, that Hyundai has not maintained records of its "method or formula of allocation" for manual allocations as required by Florida law. Hyundai admits that it does not tell dealers that engaging in

litigation against Hyundai to assert legal protections could result in the reduction of the inventory made available to them. And, here, Hyundai did not disclose what it describes as the "litigation factor" until discovery in this proceeding, meaning Universal was unaware of that factor or its potential impacts on vehicle allocation to Universal.

In a Complaint filed December 23, 2021, Plaintiff brought three (3) claims under the Florida Dealer Protection Act. Count I relates to Section 320.64(18), Fla. Stat. which prohibits Hyundai from establishing or implementing:

a system of allocation or distribution of motor vehicles to one or more of its franchised motor vehicle dealers which reduces or alters allocations or supplies of new motor vehicles to the dealer to achieve, directly or indirectly, a purpose that is prohibited by ss.320.60-320.70, or which otherwise is unfair, inequitable, unreasonably discriminatory, or not supportable by reason and good cause after considering the equities of the affected motor vehicles dealer or dealers. An applicant or licensee shall maintain for 3 years records that describe its methods or formula of allocation and distribution of its motor vehicles and records of its actual allocation and distribution of motor vehicles to its motor vehicle dealers in this state. As used in this subsection, "unfair" includes, without limitation, the refusal or failure to offer to any dealer an equitable supply of new vehicles under its franchise, by model, mix, or colors as the licensee offers or allocates to its other same line-make dealers in the state.

First, this Court has already determined that Hyundai failed to keep the required records of its "method or formula of allocation." *See* Doc. 221 at 8. ("The records identified by HMA do not meet this requirement, instead only describing actual allocations. And although the manual allocation factors describe a method guiding allocations, HMA has

not pointed to any evidence that it actually kept records of these factors, despite a clear obligation to do so.") Second, Universal contends that Hyundai implemented a system of allocation and distribution of Hyundai vehicles which was unfair, inequitable, and unreasonably discriminatory to Universal and which is not supported by reason when considering the equities of Universal. Hyundai argues that this system was premised upon a series of "factors" used by business persons when allocating certain vehicles at their discretion which Hyundai says rendered the allocations lawful. But Universal is confident that Hyundai's amorphous and undisclosed factors do not render Hyundai's system of allocation fair. Instead, they show that Hyundai went about allocating vehicles to reward dealers that they favored and punish dealers that did not bend to Hyundai's will. Third, Universal also contends that Hyundai's allocation systems violate Florida law by using allocation to encourage facility upgrades without having a uniform program, and written agreement providing for allocation as an incentive, available to all dealers on substantially similar terms. While Hyundai did use its allocations to reward dealers that provided facility upgrades, Hyundai did not have a uniform program, complete with a written agreement, as required by Florida law.

In Count II, Universal alleges Hyundai has violated §320.64(19) which prohibits Hyundai, "without good and fair cause, [] delay[ing], refus[ing], or fail[ing] to provide a supply of motor vehicles by series in reasonable quantities, including the models publicly advertised by [Hyundai] as being available." §320.64(19) also prohibits Hyundai from "delay[ing], refus[ing], or fail[ing] to deliver motor vehicle parts and accessories within a reasonable time after receipt of an order by a franchised dealer." Universal is also alleging that Hyundai delayed, refused, or failed to deliver vehicles requested by Universal within

a reasonable time after being requested or ordered. Universal alleges that Hyundai failed to provide it with a reasonable supply of vehicles. Universal is further alleging that Hyundai has not provide vehicles sufficient for it to maintain its market share or competitive position and did not have good and fair cause to do so.

In Count III, Universal alleges Hyundai has violated §320.64(22) Fla. Stat. which prohibits Hyundai from "refus[ing] to deliver, in reasonable quantities and within a reasonable time, to any duly licensed motor vehicle dealer who has an agreement with [Hyundai] for the retail sale of new motor vehicles and parts for motor vehicles sold or distributed by [Hyundai], any such motor vehicles or parts as are covered by such agreement." Universal alleges the reasons for the refusal are the same as previously described.

Count IV alleges that Hyundai has violated section 10.A.1 of the Dealer Sales and Service Agreement, ("Dealer Agreement"), that Hyundai and Universal are parties to, by not providing vehicles as required by contract. To the extent Hyundai attempts to argue the Dealer Agreement entitles it to allocate vehicles in its sole discretion, Universal argues that contract is intentionally impaired and modified by the Florida Dealer Protection Act. Indeed, inconsistent terms are void against public policy. *See* Fla. Stat. 320.63(3) ("Any franchise agreement offered to a motor vehicle dealer in this state shall provide that all terms and conditions in such agreement inconsistent with the law and rules of this state are of no force and effect."); *See also* Doc. 1-1 at 33 ("If any term or provision of this Agreement, or the application thereof to any person or circumstance, will be contrary to any law or will be adjudged by any court … to be invalid, void or unenforceable, such term or provision will be deemed deleted from this Agreement …"); *See Id.* ("This Agreement

will be governed and construed according to the laws of the state in which DEALER is located."). The provisions of Section 320.64 cited in Counts I through III are inconsistent with Hyundai being able to use its "sole discretion" to skirt its legal obligations to fairly allocate vehicles amongst its dealers. Under Florida law, and indeed the Agreement itself, the "sole discretion" term is rendered void and unenforceable. Universal's factual allegations here are similar to those explained above.

Count V alleges that Hyundai has violated the covenant of good faith and fair dealing for using its "discretion", in part, to punish Universal for vindicating its contractual and legal rights through litigation. Hyundai has acknowledged it considered whether a dealer was in litigation with Hyundai when allocating vehicles. Leveraging its superior position in regards to inventory to prevent Universal from pursuing legal remedies, particularly in instances where courts have found Universal to be in the right, is abusive and not in keeping with Universal reasonable expectations under the Dealer Agreement. This is supported by the fact that Hyundai never disclosed the fact that litigation could be a reason they would withhold allocation from a dealer, and in fact denied it, thus underscoring the fact it could not be part of the parties' reasonable expectations. In point of fact, Hyundai never divulged to Universal, any of its supposed factors for allocation. Instead, Universal reasonably expected that Hyundai would provide it with a fair and adequate supply of inventory.

### b. <u>Defendant</u>

At all times, HMA has fairly, reasonably, and equitably allocated its Hyundai-branded motor vehicles to Universal. During the relevant time period, Universal received more units under HMA's discretionary allocation system than 70% of dealers in the

Southern Region. Additionally, during a portion of the alleged damages period, Universal turned down hundreds of Hyundai vehicles and failed to even request thousands of other vehicles available to it. Despite this, Universal claims that HMA discriminated against it by failing to provide discretionary vehicles as a result of the jury verdict entered against HMA in United States District Court Middle District of Florida Case Number 6:18-cv-380-Orl-78EJK ("the Genesis Litigation"). In reality, aside from a short period of time in which HMA utilized litigation as a factor in making discretionary allocation decisions, Universal's perceived lack of discretionary allocation was a product of its own making and was caused by its own business decisions.

HMA allocates the vast majority, roughly 85%, of its new vehicles formulaically. The remaining 15% are allocated on a manual or discretionary basis. The discretionary allocation process is mostly left to HMA's regional managers. Universal is located in HMA's Southern Region, and the Southern Region management considers all relevant information in determining how to allocate its discretionary units. These managers are given discretion such that there is no single factor that determines whether a dealer will receive discretionary units. Specifically, in determining whether, and how to, allocate discretionary units throughout the Southern Region, HMA's regional management considers whatever is relevant to his business decision. However, in the past, some factors that have been considered at various points in time include: (1) how to maximize the amount of national allocation that will be given to the Southern Region; (2) how to grow and maximize the Southern Region's sales volume and performance; (3) increasing sales velocity; (4) each dealer's sales performance, "balanced day supply" of vehicles, their pipeline days supply, sales velocity, and the number of vehicles needed to bring

dealers up to a certain level of inventory; (5) whether HMA had specific programs or initiatives that the company was working towards; (6) whether a dealer participates in HMA sponsored programs or initiatives, including but not limited to those intended to increase a dealer's new vehicle sales and awareness of the Hyundai brand in the market; (7) whether a dealer is in litigation with HMA and the nature of that litigation; (8) whether a dealer participates in a Hyundai Dealer Advertising Association; (9) the available mix of vehicle models in the discretionary pool; and (10) whether there is a specific tactical market action HMA wants to support in an effort to strategically grow sales in that area. HMA does not have a checklist that is used when making allocation decisions and not all of these factors are considered every time a discretionary allocation decision is made.

The primary goal in distributing the small subset of vehicles available for discretionary allocation in the Southern Region is to maximize the total allocation that the region would earn. As such, the Southern Region management based most of its decisions on dealer performance and their ability to maximize the sales velocity of Hyundai vehicles in the region. However, as previously noted, they would consider other factors and company sales initiatives as well. Distributing discretionary allocation in this manner helped the Southern Region gain significant retail share in the new car market, and in turn, increased the amount of overall allocation to the Southern Region, which benefits all Southern Region dealers.

Although Universal received more discretionary units than approximately 70% of dealers in the region, it made self-inflicted business decisions that prevented it from earning more Hyundai vehicles, whether via formulaic or discretionary allocations. First, Universal declined to participate in a program to get it extra allocation, called HMA's

wholesale bonus program.  In this program HMA offered financial incentives to dealers willing to accept additional wholesale vehicles during COVID, before supply chain issues reduced the amount of inventory available. Universal chose not to participate after calculating the carrying costs and deciding that it did not want additional inventory offered under the program. Had Universal accepted those vehicles, it would have, in turn, increased its allocations, inventory, and days supply.

Notably, out of the 49 Hyundai dealers located in Florida, only three chose not to participate in this wholesale bonus program, including Universal. The dealers in Florida that chose to participate earned between 35 and 840 additional Hyundai units as a result of that participation. As an HMA employee testified, "dealers that took advantage of that discretionary [wholesale bonus] program and loaded up their lots with cars that they knew that were not going to sell for quite some time really had the advantage over dealers who did not" when supply constraints became problematic due to the effects of COVID-19.

Second, Universal both turned down vehicles and failed to request thousands of vehicles made available to it by HMA before supply chain issues reduced the amount of inventory available. By HMA's calculations, from July 2020 to March 2021, a period from which Universal is alleging damages, Universal refused to order **799** cars that were allocated to it by HMA and had the opportunity to potentially obtain an additional **3,000 – 4,000 vehicles** over and above its normal allocation of Hyundai vehicles. Universal requested only **133** of the additional vehicles offered. Inexplicably, Universal is now asserting that it was entitled to an additional **79** discretionary and approximately **374** formulaic vehicles during this same time period.

Third, Universal had a general manager change, which in turn came with a change in its approach to selling vehicles. Universal attempted to hold out for higher margins, which is reflected in their increased profits per vehicle sold and resulted in slower car sales.

Fourth, in the boon of the motor vehicle market, Universal did not increase its sales rates as much as its competitors. HMA's corporate designee and former Southern Region general manager testified that the primary way to earn additional vehicles is to sell them faster—to increase sales velocity. Universal simply did not do this as well as its competitors. Its failure to do so was likely caused by a combination of its failure to seek the wholesale vehicles, and its apparent change in business strategy noted above.

HMA acknowledges that there was a short period of time in 2022, approximately three months, where it canceled any discretionary allocations to dealers who were in litigation with HMA. Because of this case, which was pending at the time, Universal received zero discretionary allocations in those months. Universal was not alone in this, as other dealers who were also in litigation with HMA received zero discretionary allocations. However, aside from that short period of time, Universal was treated just like any other dealer in Florida or the Southern Region.

Universal has filed this suit because it does not agree with HMA's business practices. Based on Universal's theory of the case, as elicited by its expert, HMA should have provided discretionary allocation to dealers in a manner that is consistent with the dealers' sales share. For example, if a dealer has a 5% sales share, Universal asserts it should receive 5% of the discretionary allocation. This is simply not how HMA conducts business, nor is HMA required to conduct business this way pursuant to the Dealer

Agreement.  More importantly, Florida law does not require HMA to conduct business this way. Instead, HMA treats discretionary allocation as *discretionary*, as it is allowed to do under the law. HMA exercises its business judgment to provide discretionary allocation in a manner that benefits the Hyundai brand and is not unreasonably discriminatory, as required by law. In some months, that may mean sending additional cars to a certain metro area for a marketing initiative to outsell a competitor. In other months, it may mean replacing an entire dealer's fleet that was lost from a hailstorm.  HMA's discretionary allocation practices do not violate Florida law and Universal will not be able to establish HMA's discretionary allocation practice violate Florida law at the trial.

**4.    A list of exhibits with a notation of each objection.**

**a.  Plaintiff's exhibit list**

Plaintiff's exhibit list with Defendant's objections is attached as **Exhibit A**.

**b.  Defendant's exhibit list**

Defendant's exhibit list with Plaintiff' objections is attached as **Exhibit B**.

**5.    A list of each witness by name only with a notation of: (A) the likelihood the witness will testify and (B) each objection to the witness testifying.**

**a.  Plaintiff's witness list**

Plaintiffs' witness list is attached as **Exhibit C**.

**b.  Defendant's witness list**

Defendant's witness list is attached as **Exhibit D**.

**6.    A list of each expert witness with a notion of: (A) the substance of the testimony and (B) each objection to the witness's testifying.**

**a.  Plaintiff's expert witness**

i.  (A) Edward M. Stockton, MS - Chairman of the Board and Vice President of The Fontana Group, Inc. Stockton uses various economic models, including three methods, to determine the number of vehicles Universal should have received if Hyundai used a fair and equitable system. He then calculates the lost profits from resulting from lost sales associated with those vehicles.

ii.  (B) Objections: Hyundai filed a Daubert Motion, DE 192, seeking to exclude Stockton's opinions. While Hyundai understand the Court ruled against that motion, DE 218, Hyundai wishes to preserve its objections for the record. Hyundai argues that Stockton's opinions should be excluded because: (1) Stockton's opinions do not assist the trier of fact in that his opinions do not "fit" the case by turning Hyundai's discretionary process into a formulaic endeavor; (2) Stockton's opinions are unreliable because his employees an unreliable, untested, unreviewed, and unaccepted exclusionary analysis that fails to account for thousands of vehicles made available to Universal during the relevant time period; and (3) Stockton's opinions fails to analyze where the "extra" vehicles that Universal is allegedly entitled to should come from.

b.  **Defendant's expert witnesses**

i.  (A) John Asker, Ph.D. – Dr. Asker is an economist and his testimony is twofold: (1) he assesses Hyundai's allocation system through the lens of economics and to examines the data to see if Universal's

outcomes under this system were consistent with discrimination; and (2) he assesses and rebuts the analysis set forth in Mr. Stockton's report that Universal has received a disadvantageous share of inventory.

ii. (B) <u>Objections:</u> Universal filed a Daubert Motion, DE 119, seeking to exclude Asker's opinions. While Universal understands the Court ruled against that motion, Doc. 212, Universal wishes to preserve its objection for the record. Universal argues Asker's findings 1) do not apply the criteria found in Chapter 320 Fla. Stat. (2021) and 2) employ unreliable methodology that is directionally and unreasonably favorable to the outcome desired by his client. Contrary to Hyundai's claim above, Asker does not rebut that Universal has received a disadvantageous share of inventory, but instead makes the claim that Universal preferred lower relative inventory even in a constrained market. Universal also objects to Asker's report which relies heavily on reason codes, a mechanism used by HMA that purports to explain why discretionary allocation was provided to dealers. Hyundai witnesses have testified those codes were entered incorrectly. This renders the reason codes highly unreliable and Dr. Asker's assumptions regarding the number of vehicles provided through discretionary allocation vary greatly from the reality. *See* Universal's Omnibus Motion in Limine, DE 177 pp. 15-17. Universal has also objected to Hyundai being allowed to

14

provide redundant testimony. *See id.,* pp. 14-15. Again, Universal understands the Court has ruled on these issues, Doc. 219, and wishes to preserve its objection for the record.

iii.  <u>(A) Joseph T. Gardemal III, CPA/ABV, CVA, CFE, CDBV</u> – Mr. Gardemal is an accountant, and his testimony is twofold: (1) he assesses and rebuts the opinions and analysis contained in the report of Mr. Stockton regarding Universal's alleged damages; and (2) he performs a financial analysis of the dealership and compared its performance to a reference group of dealers.

iv.  (B) <u>Objections:</u> Part of Mr. Gardemal's report focuses on Universal's profits, essentially arguing that since Universal made more money, it was not damaged. This is a non-sequitur to Universal's claims it received an inequitable amount of allocation and Universal has objected. *See* DE 177 pp. 4-5. As described above, Universal would object to redundant testimony.  Again, Universal understands the Court has ruled on these issues, Doc. 219, and wishes to preserve its objection for the record.

**7.  A breakdown of the type and amount of monetary damages.**

Plaintiff's expert has estimated lost profits resulting from lost allocation from between $1,364,345 to $13,590,992. The variance is due to which method, time period and geographical comparison group is considered. These damages would be subject to

15

mandatory trebling under §320.697 Fla. Stat. if Universal prevails on its dealer act claims.

The contract damages are the same, without the trebling.

This is in addition to attorney's fees and costs recoverable under §320.697 Fla. Stat.

for Counts I-III.  These amounts are not subject to trebling.


**8.    A list of each deposition offered in lieu of live testimony.**

    **a.  Plaintiff's list:** The Plaintiff's deposition designations is attached as **Exhibit E.**

       1.  Robert Grafton, June 13, 2023

       2.  Todd Goetze, June 14, 2023

       3.  Alan Harriman, June 16, 2023

       4.  Alan Harriman, 30(b)(6), June 16, 2023

       5.  Scott Harrison, 30(b)(6), June 28, 2023

       6.  Steve Flood, June 15, 2023

       7.  Michal DePaul, June 28, 2023

       8.  Bob Kim, June 22, 2023

       9.  Bob Kim, 30(b)(6), June 27, 2023

      10. Bob Kim, 30(b)(6), August 3, 2023

      11. Randy Parker, June 21, 2023

      12. Randy Parker, 30(b)(6), June 21, 2023

      13. Trisha Quezada, June 2, 2023

      14. Tim Turbyfield, April 14 2023

      15. Tim Turbyfield, July 20 2023

      16. Fred Whitt, June 1, 2023

    **b.** <u>**Defendant's list:**</u> The Defendant's deposition designations is attached as **Exhibit F.**

        1.      Josiah Behlen (May 24, 2023)

        2.      Eric Kristan (May 26, 2023)

        3.      Ronald Eberhardt (May 24, 2023)

        4.      Simo Bassi (May 25, 2023)

        5.      William Nero, 30(b)(6) (June 1, 2023)

        6.      William Nero (April 23, 2023)

**9.**    **A concise statement of each admitted fact.**

    **a.** <u>**Parties and their Relationship**</u>

1.    Universal is an authorized Hyundai dealership.

2.    Universal is owned by William Nero, who serves as its President and CEO.

3.    Hyundai is wholly owned by Hyundai Motor Corporation ("HMC") and is the exclusive authorized distributor of Hyundai vehicles in the United States.

4.    Hyundai distributes Hyundai vehicles through a network of approximately 840 authorized independent dealers, one of which is Universal.

5.    Universal has been a Hyundai dealer since 1996.

6.    Hyundai divides its operations into geographical regions, and Florida is in Hyundai's "Southern Region".

7.    Hyundai's internal designation, or "dealer code", for Universal is "FL103". Hyundai has similar codes for each Hyundai dealer in the United States.

8.  In August 2020, Bob Kim was hired by Hyundai to be the Southern Region General Manager. Mr. Kim held that role until August 2022 when he was promoted to Vice President, National Sales for Hyundai.

9.  Universal and Hyundai are parties to a Hyundai Dealer Sales and Service Agreement ("DSSA")(ECF 1-1) pursuant to which Universal operates a dealership for the sale and service of Hyundai brand motor vehicles.

10.  This is not the first lawsuit between Universal and Hyundai. Universal filed a separate lawsuit against Hyundai in 2018 relating to Hyundai's breach of a settlement agreement (the "Genesis Litigation").

11.  The Genesis Litigation proceeded to trial between September and October of 2021, and the jury found in favor of Universal awarding a monetary judgment in the amount of $16,000,000 to Universal.

**b.  <u>Vehicle Allocation</u>**

12.  From at least March 2021 to June 2023, Hyundai vehicles have been in short supply.

13.  On May 27, 2021, Universal sent a letter to Hyundai regarding its allocation levels. While Hyundai reserves the right to challenge the truth of the matters asserted in the letter, the content of the letter speaks for itself.

14.  Hyundai responded to the letter on June 14, 2021. While Universal reserves the right to challenge the truth of the matters asserted in the letter, the content of the letter speaks for itself.

15.  Universal sent another letter on December 13, 2021, again alleging that it did not have sufficient inventory. While Hyundai reserves the right to challenge the truth

of the matters asserted in the letter, the content of the letter speaks for itself. Hyundai did

not respond to the letter or seek to discuss it with Universal.

16.    This lawsuit was filed on December 23, 2021.

17.    Hyundai has two separate systems of allocation, the formulaic allocation

system and the manual allocation system.

18.    Most of the vehicles produced by Hyundai are distributed through its

formulaic allocation system.

19.    Hyundai uses two primary algorithms to distribute vehicles via the

formulaic system: "turn and earn" and "balanced day supply." Hyundai selects which

algorithm to use.

20.    These formulas have adjustable parameters, such as sales period, which

require human input, but are otherwise calculated by a computerized system.

21.    Manual allocations are those which are allocated outside of the formulaic

allocation system.

22.    Discretionary allocation is part of Hyundai's manual allocation system.

### c. HDAA and Facility

23.    Universal has been a member of a Hyundai Dealer Advertising

Association ("HDAA") during the entire time period at issue.

24.    As a member of the HDAA, Plaintiff has always paid a per vehicle fee to

Hyundai as required for participation in the HDAA.

25.    At any point in time, Hyundai has facility image programs describing how

it prefers its dealerships to look. The current such image program is called GDSI 2.0.

26.    Universal does not currently have a GDSI 2.0 facility.

**10.    A concise statement of each agreed principle of law.**

1.  Universal is a "motor vehicle dealer" as defined in Fla. Stat. § 320.60(11) (2021).

2.  Hyundai is a "licensee" as defined in Fla. Stat. § 320.60(8) (2021).

3.  The Dealer Agreement or DSSA is a "franchise agreement" as defined in Fla. Stat. § 320.60(1).

4.  Hyundai failed to maintain records describing its "methods or formula of allocation and distribution" for manual allocation.

5.  Pursuant to Fla. Stat. § 320.697, upon a prima facie[2] showing by Universal that Hyundai has violated the Act, the burden of proof shall then be upon Hyundai to prove that such violation or unfair practice did not occur.

6.  Hyundai's defense of first material breach is not applicable to Universal's statutory claims.

**11.    A concise statement of each issue of fact without incorporating another paper.**

1.  The basis for Hyundai's discretionary allocation decisions in the Southern Region.

2.  Whether Hyundai retaliated against Universal, in part, based on the prosecution of; and verdict in; the Genesis Litigation or the present litigation.

3.  Whether Hyundai allocated discretionary inventory to Universal in a fair, equitable, and nondiscriminatory manner.

---

[2] At this time, the parties are not in agreement as to how the "prima facie" showing and burden shift should function in practice.

4.  Whether Hyundai allocated cars to Universal in violation of the Fla. Stat. § 320.64(18).

5.  Whether Hyundai has delayed, refused, or failed to provide Universal with a supply of motor vehicles in reasonable quantities in violation of the Fla. Stat. §320.64(19).

6.  Whether Hyundai has failed to provide Universal with a supply of motor vehicles in reasonable quantities in a reasonable timeframe in violation of the Fla. Stat. § 320.64(22).

7.  Whether Hyundai's alleged violation of any statute adversely affected Universal.[3]

8.  Whether Hyundai's alleged violation of any statute caused pecuniary harm to Universal. Whether Hyundai's alleged breach of the Dealer Agreement caused Universal to suffer monetary or competitive harm.

9.  Whether Universal committed an unconscionable act or engaged in reprehensible conduct that is directly related to the matter that is the subject of this litigation which Hyundai relied on and was damaged by.[4]

10. Whether Universal committed a first breach of the Dealer Agreement.[5]

11. Whether Hyundai waived the prior breach.

---

[3] Hyundai does believe this is an issue of fact remaining in this case. Universal has asserted no "adverse affect" other than pecuniary loss. As such, this issue is redundant of the following issue and not necessary.
[4] Plaintiff argues that the unclean hands defense does not apply to this trial.
[5] Plaintiff argues that Hyundai should not be permitted to argue the affirmative defense of first breach.

12. If Universal committed a first breach, whether such a breach was material or substantial to the Dealer Agreement.

13. If Universal committed a first breach, whether such a breach was a dependent covenant.

14. Whether Hyundai was damaged by the alleged first breach.

15. Whether Hyundai was capable of performing its contractual obligations notwithstanding any discharge of such contractual obligations.

**12.    A concise statement of each issue of law without incorporating another paper.**

**a.  Count I: Fla Stat. §320.64(18)**

1.    Whether Hyundai's system(s) of allocation or distribution reduced or altered allocations or supplies of new motor vehicles to one or more of its dealers to achieve, directly or indirectly, a purpose prohibited by §§ 320.60-70, including § 320.64(10).

2.    Whether Hyundai's system(s) of allocation or distribution were "unfair, inequitable, unreasonably discriminatory, or not supportable by reason and good cause after considering the equities of the affected motor vehicle dealer" as prohibited by Fla. Stat. §320.64(18).

3.    Whether in violation of §320.64(18), Fla. Stat., Hyundai took, or threatened to take, any action that was unfair or adverse to Universal because it did not enter into an agreement with Hyundai regarding its facilities.

4.   Whether §320.64(18), Fla. Stat., requires Universal to make a prima facie showing pertaining to the "equities" of other affected motor vehicle dealers.[6]

**b. Count II: Fla Stat. §320.64(19)**

5.   Whether Hyundai, without good or fair cause, delayed, refused, or failed to provide a supply of motor vehicles by series in reasonable quantities, including the models publicly advertised by Hyundai as being available, to Universal.

**c. Count III: Fla Stat. §320.64(22)**

6.   Whether Hyundai refused to deliver, in reasonable quantities and within a reasonable time, to Universal any vehicles covered by the Dealer Agreement.

**d. Count IV: Breach of Contract**

7.   Whether Hyundai breached its contractual obligations to provide Hyundai vehicles to Universal.

8.   What level of discretion, if any, Hyundai has to allocate vehicles under the Dealer Agreement in light of §§ 320.64(18,19, 22) Fla. Stat.

9.   Whether the "best efforts" requirement of Section 10.A. of the Dealer Agreement applies in times of "short supply" of Hyundai vehicles.

**e. Count V: Breach of Covenant of Good Faith and Fair Dealing**

---

[6] Plaintiff objects to this being an issue. Universal is the "affected" dealer for this case, and indeed is the only dealer claiming to be affected by Defendant's allocation conduct. As this Court pointed out in an earlier Order, "Indeed, in a previous case involving **these parties and this statute, this Court has applied this language** suggesting that the 'affected motor vehicle dealer' is only the dealer alleging wrongdoing by a licensee'." *See* Doc. 221 at 5-6, quoting *Action Nissan, Inc. v. Hyundai Motor Am.,* 617 F. Supp. 1177, 1199-1203 (M.D. Fla. 2008). There are now two opinions from the Middle District on this narrow issue in a rarely litigated statute. It is clear that for the purposes of this trial, Plaintiff is the "affected" dealer for the purposes of §320.64(18).

10. Whether Hyundai's conduct was consistent with the parties' reasonable expectations under the Dealer Agreement.

11. Whether Hyundai's application of its discretion to its allocation of vehicles was in keeping with the Covenant of Good Faith and Fair Dealing.

12. What level of discretion, if any, Hyundai has to allocate vehicles under the Dealer Agreement in light of §§ 320.64(18,19, 22) Fla. Stat.

### f. Affirmative Defenses

13. Whether Hyundai is precluded from arguing that Universal failed to mitigate damages because Hyundai did not plead the affirmative defense.[7]

14. Whether Hyundai's defense of first material breach is applicable to the breach of contract claim and whether Universal's alleged breach could excuse Hyundai's future performance, in light of the Dealer Protection Act.

### 13. Voir Dire

The Parties suggested *voir dire* questions are attached as **Exhibit G**.

### 14. Jury Instructions

The Parties joint proposed jury instructions are attached as **Exhibit H**. The Parties have indicated where there is a disagreement and have included authority and objections related to those disagreements.

### 15. Verdict Forms

### a. Plaintiff

---

[7] "HMA is arguing, to some extent, that by turning down vehicles, Universal failed to mitigate its damages in this case. However, failure to mitigate damages is an affirmative defense that HMA has not pled. *Frederick v. Kirby Tankships, Inc.*, 205 F.3d 1277, 1286–87 (11th Cir. 2000). Therefore, inasmuch as HMA's argument here is that Universal failed to mitigate, that argument is waived. *Id.*" Doc 221 at p.4.

The Plaintiff's proposed verdict form is attached as **Exhibit I**.

    **b.  Defendant**

The Defendant's proposed verdict form is attached as **Exhibit J**.

**16.     A list of each pending motion or unresolved issue.**

  i.  DE 189 Bench Memo on Burden of Proof
 ii.  DE 223 HMA's Motion for Reconsideration

**17.     A statement of the usefulness of further settlement discussions.**

The Parties do not believe further settlement discussions would be productive at

this time.

**18.     Signatures and Certifications.**

Dated: January 10, 2025.

                                  Respectfully Submitted,

/s/ *Ginger Barry Boyd*                         /s/ *Nicholas A. Bader*_____

James Andrew Bertron, Jr.              Nicholas A. Bader (FBN 55351)

Florida Bar No. 0982849                Jason T. Allen (FBN 25659)

Ginger Barry Boyd                    Andrew G. Thomas (FBN 1018226)

Florida Bar No. 294550               Jeremiah M. Hawkes (FBN 472270)

NELSON MULLINS RILEY &          **BASS SOX MERCER**

SCARBOROUGH LLP              2822 Remington Green Circle

215 South Monroe Street, Suite 400   Tallahassee, Florida 32308

Tallahassee, FL 32301               T: 850.878.6404

Tel.: (850) 907-2507                F: 850.942.4869

andy.bertron@nelsonmullins.com    nbader@bsm-law.com

ginger.boyd@nelsonmullins.com      jallen@bsm-law.com

                                       athomas@bsm-law.com

Todd K. Norman                    jhawkes@bsm-law.com

Florida Bar No. 62154

NELSON MULLINS RILEY &

SCARBOROUGH LLP             *Attorneys for Plaintiff, Action Nissan, Inc.*

390 North Orange Avenue, Suite 1400

Orlando, FL 32801

Phone: (407) 669-4300
Fax: (407) 425-8377
todd.norman@nelsonmullins.com

Christopher C. Genovese (pro hac vice)
South Carolina Bar No. 72630
Federal Bar No. 9460
Chris.genovese@nelsonmullins.com
NELSON MULLINS RILEY &
SCARBOROUGH
1320 Main Street
Columbia, SC 29201
Phone: (803) 255-9593


*Counsel for Defendant Hyundai Motor America*